Stephen **SKIPPER** and Earl Andrews, Plaintiffs,

v.

John H. **PHIPPS;** John H. Phipps Broadcasting Stations, Inc.; P. L. Taylor, Individually and as a deputy sheriff of Leon County; and Ken Katsaris, Individually and as Sheriff of Leon County, Florida, Defendants.

No. 79–0847.

United States District Court, N. D. Florida, Tallahassee Division.

Jan. 24, 1980.

Kenneth G. Oertel, Tallahassee, Fla., for Skipper.

M. Howard Williams, Tallahassee, Fla., for Andrews.

Robert M. Ervin, Tallahassee, Fla., for Phipps and Phipps Broadcasting.

Julius F. Parker, Jr., Tallahassee, Fla., for Taylor and Katsaris.

## ORDER

HIGBY, District Judge.

This is a suit for money damages and injunction brought under 42 U.S.C. § 1983 wherein Plaintiffs urge causes of action arising from the First and Fourteenth Amendment to the United States Constitution and have added a state claim of malicious defamation of reputation. Plaintiffs, Skipper and Andrews, are suing John E. Phipps; John H. Phipps Broadcasting Stations, Inc.; P. L. Taylor, individually and as a Deputy Sheriff of Leon County; and Ken Katsaris, individually and as Sheriff of Leon County. The suit arises from a series of incidents in which Plaintiffs, while duck hunting, carried their boat over a strip of land and were confronted by Defendant Taylor and told that they were trespassing. Plaintiffs were charged with five counts of trespassing in violation of Section 810.09, Florida Statutes, and in April, 1979, were tried to a jury and found not guilty.

Defendant Taylor is a former Leon County Sheriff's Officer and a former employee of the Game and Fish Commission who was employed by Phipps Broadcasting during the incidents comprising the present case to protect their property from vandalism and other damage. Taylor received, pursuant to this private employment, a commission from the Leon County Sheriff's Office which gave him the powers of a Deputy Sheriff. Plaintiffs allege that they were "arrested" by Taylor five different times for trespassing over a part of the Phipps' property. These "arrests," however, consisted of Taylor stopping the men and asking for identification or warning them that they were trespassing. At some later time, Taylor filed an affidavit with the State Attorney's Office which resulted in charges of five counts of criminal trespass against the Plaintiffs.

The basis of Plaintiffs' 1983 Complaint is that the area on which they trespassed is actually public land to which the United States Constitution and laws guarantee a right of access. Specifically, they allege that Lake Jackson is navigable water, owned and held in trust by the State of Florida, and that the land on which they trespassed was actually below the ordinary high water mark of the lake (and therefore a part of the lake open to the public). Following this line of thought, Plaintiffs allege that they were unlawfully arrested and that Defendant Taylor was deputized by Defendant Katsaris, Sheriff of Leon County, for the express purpose of using color of law to carry out the purpose of the Defendant, Phipps Broadcasting, which was to interfere with the Plaintiffs' lawful uses of the waters and lands beneath Lake Jackson.

Presently before the court are: Plaintiffs' Motion to Join the State of Florida Board of Trustees of the Internal Improvement Fund as party plaintiffs, the Motion for Summary Judgment of Defendant John Phipps Broadcasting Stations, the Motion for Rehearing on Motion for Summary Judgment of Defendants Taylor and Kat-

saris, and Defendant Phipps Broadcasting's Objection to Interrogatories. Having considered the exhibits of record, affidavits, and evidence adduced at the December 18, 1979, hearing, the court finds the following facts to appear without substantial controversy:

1. The five alleged arrests all occurred in late 1978 at the same location, which was a strip of land 50 to 75 yards wide separating Carr Lake from Mallard Pond. Plaintiffs had either launched their boat on Carr Lake and were attempting to reach Mallard Pond by dragging the boat over the above strip of land, or were attempting to leave Mallard Pond by that route.

2. An alternate route exists which allows access to Mallard Pond from Carr Lake by water.

3. No trespass charges were ever filed against Plaintiffs as to the first instance of overhauling which occurred on the opening day of hunting season in November, 1978. During this first incident, Plaintiffs received warning from Deputy Taylor and also saw two different signs which warned against trespassing.

4. From the depositions of Plaintiffs Skipper and Andrews, it appears that the alleged arrests, in each case, consisted of no more than Deputy Taylor stopping the Plaintiffs, asking for identification, and warning the Plaintiffs that they would be arrested for crossing the land in question. The Plaintiffs were told that the land they were crossing belonged to the Phipps Broadcasting Stations.

5. The Plaintiffs' depositions also show that they were never taken into custody, were never detained unreasonably, and in fact were never prevented from crossing the strip of land in question or from continuing to hunt. The Plaintiffs were merely told repeatedly that they would be arrested.

6. The affidavits of State Attorney Harry Morrison and Assistant State Attorneys Charles Warren Goodwin and Robert L. Cummings show that the State Attorney's Office received written complaints executed by Defendant Taylor stating that Skipper and Andrews had on several dates trespassed after notice on the lands of Phipps Broadcasting Stations.

7. On or about December 12, 1978, Harry Morrison, acting as State Attorney for the Second Judicial Circuit of Florida, filed an information charging the Plaintiffs with five counts of criminal trespass in violation of Section 810.09, Florida Statutes.

8. Prior to filing the above information, members of Mr. Morrison's staff investigated the complaints against the Plaintiffs to determine if an adequate basis existed for filing of an information.

9. In April, 1979, the charges against Plaintiffs were tried to a jury, and the Plaintiffs were found not guilty. During the course of the trial and at the conclusion of the evidence for the State, counsel for Skipper and Andrews moved for a judgment of acquittal which was denied by the court.

10. The affidavit of P. L. Taylor recites that, to his knowledge, the land over which Plaintiffs crossed has belonged to the Phipps family or corporation for as long as he can remember.

11. P. L. Taylor is a former deputy of the Leon County Sheriff's Office and a former wildlife officer with the Florida Game and Fish Commission. At the time the incidents disputed in this case occurred, Mr. Taylor held a commission from Sheriff Ken Katsaris of the Leon County Sheriff's Office and was in the full time employ of the Phipps Broadcasting Corporation. To be eligible to receive a deputy's commission, Mr. Taylor had to meet the same educational and experiential requirements as a full time sworn officer working for the Sheriff's Department.

12. Defendant Phipps Broadcasting Stations has established a clear chain of title to the property disputed in this case, and no evidence has been presented to show any existing challenge to the validity of that title.

Plaintiffs in this case attempt to extract from the above facts a cause of action under 42 U.S.C. § 1983. They allege that they

were arrested without cause in deprivation of that liberty guaranteed by the Fourteenth Amendment. They allege that the Defendants wrongfully interfered with their right to use the public lands and waters of Lake Jackson, in deprivation of some unspecified First Amendment right and of the Fourteenth Amendment right to property.

Plaintiffs' contention that they were arrested by Deputy Taylor cannot stand, under either a federal or state law definition of arrest. Plaintiffs cite *U. S. v. Brunson*, 549 F.2d 348 (5th Cir. 1977), *rehearing denied*, 552 F.2d 369, *cert. den.*, 434 U.S. 842, 98 S.Ct. 140, 54 L.Ed.2d 107, *rehearing denied*, 434 U.S. 961, 98 S.Ct. 495, 54 L.Ed.2d 322, for the proposition that words of arrest or booking need not be present to constitute an arrest requiring probable cause under the Fourth Amendment; a proposition this court readily adopts. The *Brunson* case also teaches, however, that an arrest is made "whenever a police officer accosts an individual and restrains his freedom to walk away." *Brunson* at 357. The Plaintiffs in this case were in all instances permitted to carry on with their activities. Deputy Taylor did not prevent them from walking away or from continuing to hunt or even from continuing to cross the land in question. Likewise, under Florida law, Plaintiffs cannot be said to have suffered arrest. As recited in *Bey v. State*, 355 So.2d 850 (Fla. 3d DCA 1978), the elements of an arrest are well settled in Florida:

(a) [A] purpose or intention to effect an arrest under real or pretended authority;

(b) an actual or constructive seizure or detention of one person by another having present power to control the person arrested;

(c) a communication by the person making the arrest to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and

(d) an understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him. (Citations omitted.)

*Bey* at 852.

A crucial element of at least three of the above factors is the *present* power, intention, or purpose of the officer to effect arrest. Deputy Taylor's actions vis-a-vis the Plaintiffs repeatedly made clear that his only present intention was to warn the Plaintiffs that they were trespassing and that legal consequences would ensue. Based on undisputed facts, Plaintiffs have failed to make out the first element of their case, and this court finds as a matter of law that no arrest occurred.

After positing that their encounters with Deputy Taylor constituted arrests, Plaintiffs contend that those arrests were illegal and in violation of their constitutional rights because the lands they were crossing were actually public lands. The court is asked to find that Skipper and Andrews were deprived of a constitutional right to use state sovereignty lands. In Florida, the Florida Board of Trustees of the Internal Improvement Fund holds title to State sovereignty lands for the benefit of the people of the State. *Broward v. Mabry*, 58 Fla. 398, 50 So. 826 (1909); *Martin v. Busch*, 93 Fla. 535, 112 So. 274 (1927). Plaintiffs here contend that Carr Lake and Mallard Pond are both actually parts of Lake Jackson, a navigable water; that the land they crossed was below the ordinary high water mark of Lake Jackson; and that they were therefore using State sovereignty lands. The court finds no need to determine the validity of these allegations; for even if proven true, Plaintiffs would still have to identify a federal privilege or right to use State sovereignty lands. The cases Plaintiffs cite, *Illinois Central Railway Company v. Illinois*, 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892); *Shively v. Bowlby*, 152 U.S. 1, 14 S.Ct. 548, 38 L.Ed. 331 (1894); *U. S. v. Holt State Bank*, 270 U.S. 49, 46 S.Ct. 197, 70 L.Ed. 465 (1926), all have something to say about sovereignty lands and the powers

of states with regard to these lands, but the Supreme Court makes no mention of any federally created right, running to individuals, to use or have access to sovereignty lands. In fact, sovereignty lands are described as property of the state as an entity: "It is settled law in this country that lands underlying navigable waters within a state belong to the state in its sovereign capacity and may be used and disposed of as it may elect . . . ." *United States v. Holt State Bank*, 270 U.S. 49, 54, 46 S.Ct. 197, 198, 70 L.Ed. 465 (1926). The sworn facts in this case show that title to the land in question is held by the Phipps Broadcasting Stations. Before a finding could be made that Plaintiffs here were arrested illegally, this court would have to find that Plaintiffs have a federal right to use of state sovereignty lands, that the lands in question are state sovereignty lands, and that Phipps Broadcasting's title to these lands was defeated by the Plaintiffs' right of use. The Plaintiffs have introduced no sworn evidence to support this line of inference, and no genuine issue of fact can be made out of Plaintiffs' bald allegation that title to the land is in the State of Florida.

Plaintiffs having assumed that they were arrested and that their arrests were illegal, argue that this court, under the reasoning of *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir. 1977), cannot dispose of this case on a summary judgment motion and must submit the question of the qualified immunity and good faith of Deputy Taylor to the finder of fact. The material facts now in evidence point to the conclusion that Deputy Taylor did act in good faith, but there is no need for the court to reach the merits of that defense since, as a matter of law, the Plaintiffs have not shown a violation of 42 U.S.C. § 1983. As recently held by the Supreme Court in *Baker v. McCollan*, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979):

> The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.' If there has been no such deprivation, the state of mind of the defendant is wholly immaterial.

(Footnote omitted.)

In closing, the court observes that there may be an issue of state law buried somewhere in this case which, brought before the proper court, would force the resolution of any dispute as to the status of the lands here in question. Despite the artful attempts of these Plaintiffs, however, this court declines to transform an alleged § 1983 action into a complex suit to quiet title between the State of Florida Trustees of the Internal Improvement Fund and the Phipps Broadcasting Stations, Inc.

There being no genuine issue as to any material fact, and it appearing to the court that the Defendants are entitled to judgment as a matter of law, it is

ORDERED that:

1. Plaintiffs' Motion to Join the State of Florida Board of Trustees of the Internal Improvement Fund as party plaintiffs is DENIED.

2. The Motion for Rehearing on Motion for Summary Judgment of Defendants Taylor and Katsaris is GRANTED.

3. Summary Judgment against Plaintiffs Skipper and Andrews is GRANTED for all Defendants as to any claims under 42 U.S.C. § 1983.

4. The court declines to exercise pendent jurisdiction over any remaining state claims.